IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF BRIAN MOQUIN, ESQ. CALIFORNIA BAR NO. 257583.

No. 78946

FILED

OCT 21 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

## ORDER APPROVING CONDITIONAL GUILTY PLEA AGREEMENT AND ENJOINING ATTORNEY FROM PRACTICING LAW IN NEVADA

This is an automatic review of a Northern Nevada Disciplinary Board hearing panel's recommendation that this court approve, pursuant to SCR 113, a conditional guilty plea agreement in exchange for a stated form of discipline for California-licensed attorney Brian Moquin. Under the agreement, Moquin admitted to violating RPC 1.13 (diligence), RPC 1.4 (communication), and RPC 1.16 (declining or terminating representation) during his pro hac vice representation of a plaintiff in Nevada state court. The agreement provides for a two-year injunction on his practice of law in Nevada and requires him to pay the costs of the disciplinary proceeding.

Moquin has admitted to the facts and violations alleged in the complaint. The record therefore establishes that Moquin, who was admitted to practice law in this state pro hac vice to represent a plaintiff in a single matter proceeding in Nevada State District Court, failed to comply with NRCP 16.1 disclosure and discovery requirements and related court orders. Subsequently, on the defendant's unopposed motion, the district court dismissed the action with prejudice as a sanction for the discovery violations. Additionally, Moquin failed to adequately communicate with the client about the status of the case and after the client retained new counsel

19-43415

to pursue a motion for relief from the judgment, Moquin failed to provide new counsel with the client file and other documents that he had agreed to provide, which may have supported setting aside the judgment. As Moquin has admitted to the violations as part of the plea agreement, the issue for this court is whether the agreed-upon discipline sufficiently protects the public, the courts, and the legal profession. *State Bar of Nev. v. Claiborne*, 104 Nev. 115, 213, 756 P.2d 464, 527-28 (1988) (explaining purpose of attorney discipline).

Based on our review of the record, we conclude that the guilty plea agreement should be approved. *See* SCR 113(1); *see also* SCR 99(1); *Matter of Discipline of Droz*, 123 Nev. 163, 167-68, 160 P.3d 881, 884 (2007) (observing that this court has jurisdiction to impose discipline on an attorney practicing with pro hac vice status regardless of the fact he is not a member of the Nevada State Bar). Considering the duties violated, Moquin's mental state (knowing), the injury caused (dismissal of action with prejudice), the aggravating circumstance (substantial experience in the practice of law), and the mitigating circumstance (absence of prior discipline), we agree that a two-year injunction on the practice of law in Nevada is appropriate. *See In re Discipline of Lerner*, 124 Nev. 1232, 1246, 197 P.3d 1067, 1077 (2008) (identifying four factors that must be weighed in determining the appropriate discipline—"the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors"); *cf.* ABA Standards for Imposing Lawyer Sanctions, *Compendium of Prof. Responsibility Rules and Standards*, Standard 4.42(a) (Am. Bar Ass'n 2017) (providing that suspension is appropriate when "a lawyer knowingly fails to perform services for a client and causes injury").

Accordingly, Moquin is hereby enjoined from the practice of law in Nevada for two years from the date of this order. Should Moquin wish to practice law in Nevada after that time, either as a Nevada attorney or through pro hac vice admission, he must disclose this disciplinary matter in any applications he may submit to the pertinent Nevada court or the State Bar of Nevada. As agreed, Moquin must pay the actual costs of the disciplinary proceedings, including $2,500 under SCR 120, within 90 days from the date of this order.

It is so ORDERED.

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Stiglich

_____, J.
Cadish

HARDESTY, J., with whom PARRAGUIRRE and SILVER, JJ., agree, dissenting:

I disagree that prohibiting Moquin from applying for admission to the Nevada Bar or seeking pro hac vice admission for two years is sufficient discipline, considering Moquin's admitted lack of diligence and communication, the gravity of the client's loss, and Moquin's knowing mental state. *See In re Discipline of Lerner*, 124 Nev. 1232, 1246, 197 P.3d 1067, 1077 (2008) (listing factors to be weighed in an attorney discipline determination); *In re Discipline of Schaefer*, 117 Nev. 496, 515, 25 P.3d 191, 204 (2001) (noting that "this court is not bound by the panel's findings and recommendation, and must examine the record anew and exercise independent judgment"). I therefore dissent.

The record establishes that Moquin was retained to represent a client in an action concerning breach of commercial lease agreements and in August 2014, Moquin arranged with a Nevada-licensed attorney to have a complaint filed in the Second Judicial District alleging damages of roughly $15 million plus interest. Moquin, who was admitted pro hac vice as the client's counsel, repeatedly failed to comply with NRCP 16.1 discovery requirements during the three-plus years that this matter was pending. In particular, he failed to provide (1) a damages computation in the initial disclosures, or any time thereafter despite the defendants' numerous requests for that information and court orders compelling such disclosure; (2) a proper expert witness disclosure; and (3) documents that responded to the defendants' discovery requests. Despite failing to comply with the district court's May 2017 order requiring service of the still undisclosed damages computation, Moquin filed a summary judgment motion with new damages categories and figures based on previously undisclosed documents and expert witness opinions. The defendants then filed a motion to dismiss the complaint as a sanction for discovery violations, which Moquin did not oppose within the extended time for doing so. In granting the motion and dismissing the complaint with prejudice, the district court pointed to the repeated failures to comply with orders and egregious discovery violations that persisted throughout the litigation.

The conditional guilty plea agreement also acknowledges that had the disciplinary matter proceeded to a formal hearing, the State Bar would have presented testimony that Moquin failed to adequately communicate with the client about the status of the case and blamed delays on opposing counsel instead of his own lack of diligence in meeting discovery obligations, while Moquin would have testified that he kept the client

informed about the progress of the case. Regardless, Moquin's communication shortcomings continued beyond that, as he failed to meaningfully respond to the client's numerous requests for his file and other documents that Moquin had agreed to provide to assist the client in salvaging the case. Because Moquin never gave the client the complete file or the documents to show that his neglect in handling the case may have been excusable, the district court denied the client's NRCP 60(b) motion for relief from the dismissal order, and the client was thus never able to test his complaint on the merits.

When we are faced with misconduct by an attorney practicing in Nevada without a Nevada law license, we do not have the benefit of all the sanctions available to us in responding to the same misconduct by a Nevada-licensed attorney. *See Matter of Discipline of Droz*, 123 Nev. 163, 168, 160 P.3d 881, 885 (2007) (acknowledging limitations on discipline that can be imposed on an attorney who engages in misconduct in Nevada but does not have a Nevada law license). In particular, we cannot impose the traditional forms of attorney discipline that directly affect an attorney's licensure, such as suspension and disbarment, on a non-Nevada-licensed attorney. *See id.* (discussing case where Indiana court observed that a "law license issued by California was not subject to sanction by the Indiana court"). As a result, when we look to the ABA Standards for Imposing Lawyer Sanctions for guidance in determining the appropriate discipline, we must keep in mind that those standards are focused on the appropriate discipline for an attorney who is licensed in the jurisdiction and in many instances recommend discipline that cannot be imposed on an attorney who is not licensed in the jurisdiction. Thus, when considering the appropriate discipline for misconduct by a non-Nevada-licensed attorney for which the

ABA Standards call for a sanction directly affecting licensure, we must be aware of the shortcomings in the standards and "fashion practice limitations through our injunctive and equitable powers that are equivalent to license suspension, disbarment, or other sanctions related to an attorney's license." *Attorney Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 269-70 (Iowa 2010). Doing so is important not just to protect Nevada citizens but also to adequately convey to the licensing state the seriousness of the professional misconduct the attorney has committed in Nevada.

In my opinion, the conditional guilty plea agreement and hearing panel recommendation fall short of fashioning a practice limitation that is equivalent to the appropriate sanction if Moquin had a Nevada law license. I am particularly concerned with the reliance on ABA Standard 4.42 as the starting point. When an attorney "knowingly fails to perform services for a client," the line between suspension and disbarment under the ABA Standards depends on the level of injury to the client—"serious or potentially serious injury *to a client*" warrants disbarment whereas "injury or potential injury to a client" warrants suspension. *Compare* ABA Standard 4.41(b) (disbarment), *with* ABA Standard 4.42(a) (suspension). The record here suggests that the injury to Moquin's client was serious. In presenting the matter, bar counsel stated that this was a legally clear breach of contract matter, and although there is no guarantee that the client would have recovered, he should have had the benefit of diligent representation that would have allowed his claims to be heard. Bar counsel further explained that although Moquin did not provide an NRCP 16.1 damages computation, the claims were based on loss of lease payments of around $50,000 per month and the client was seeking millions of dollars in damages. As such, I believe the court is being asked to look to the wrong

SUPREME COURT
OF
NEVADA

(O) 1947A

6

standard as a starting point to fashion a limit on Moquin's opportunity to practice in Nevada that would be equivalent to the license restrictions that would be placed on a Nevada-licensed attorney for similar misconduct. Based on the record currently before the court, I would look to ABA Standard 4.41(b) and fashion a limit on Moquin's practice that is equivalent to disbarment.

Even if ABA Standard 4.42(a) were the appropriate starting point, I am not convinced that the agreed-upon two-year injunction is equivalent to a license suspension. Moquin is merely being limited in his ability to apply for regular or pro hac vice admission for a two-year period. There is no suggestion, however, that Moquin ever intends to seek regular admission to the Nevada bar, so in that respect the two-year restriction is of little moment. And SCR 42(6)(a) already presumptively limits the number of pro hac vice admissions an attorney may be granted, thus diminishing the practical impact of a two-year restriction on any such admissions. We also cannot be sure what discipline, if any, will be imposed in California, where Moquin is licensed. In particular, while California law provides that this court's decision that a California-licensed attorney committed misconduct in Nevada is "conclusive evidence that the [California] licensee is culpable of professional misconduct in [California]," Cal. Bus. & Prof. Code § 6049.1(a), it does not require that California impose the same or similar discipline as this court, see id. § 6049.1(b)(1) (providing that the disciplinary board shall determine in an expedited proceeding "[t]he degree of discipline to impose"). For these reasons, I am concerned that the agreed-upon discipline approved by the majority does not sufficiently serve the purpose of attorney discipline. See State Bar of Nev. v. Claiborne, 104 Nev. 115, 213, 756 P.2d 464, 527-28 (1988) (recognizing

that the purpose of attorney discipline is to protect the public, courts, and the legal profession). I would reject the conditional guilty plea agreement and remand for proceedings before a hearing panel so it may fully assess this matter and recommend discipline in light of the factors outlined in *Lerner* and consistent with the purpose of attorney discipline.

_____ , J.
Hardesty

We concur:

_____ , J.
Parraguirre

_____ , J.
Silver

cc:    Chair, Northern Nevada Disciplinary Board
       Brian Moquin, Esq.
       Bar Counsel, State Bar of Nevada
       Executive Director, State Bar of Nevada
       Admissions Office, U.S. Supreme Court